FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
Jan 12, 2023
SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

THELMA A.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2]

Defendant.

No. 2:20-CV-00386-ACE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**ECF Nos. 24, 33**

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 24, 33. Attorney Christopher H. Dellert represents Thelma A. (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits and Supplemental Security Income on December 22, 2017, alleging an amended disability onset date of December 22, 2017. Tr. 16, 89, 240-52. The applications were denied initially and upon reconsideration. Tr. 153-70, 173-86. Administrative Law Judge (ALJ) Glenn G. Meyers held a hearing on February 4, 2020, Tr. 38-88, and issued a partially favorable decision on February 26, 2020. Tr. 12-37. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on August 25, 2020. Tr. 1-6. The ALJ's February 26, 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 20, 2020. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or

if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE FINDINGS**

On February 26, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date of disability through November 19, 2019, but that she became disabled on November 20, 2019. Tr. 12-37.

At step one, the ALJ found Plaintiff, who meets the insured status requirements of the Social Security Act through December 31, 2022, had not engaged in substantial gainful activity since her alleged onset date. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: diabetes; obesity; fibromyalgia; lumbar degenerative disc disease; a depressive disorder; and an anxiety disorder. Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 20.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found that prior to November 20, 2019 she could perform light work, with the following nonexertional limitations:

> [Plaintiff] required a sit/stand option in the workplace. She could perform frequent reaching, handling and fingering. She could occasionally stoop and crouch. She could never crawl, kneel, or climb ramps, stairs, ropes, ladders, or scaffolds. She could never work at heights, balance, drive, ambulate across uneven surfaces, or work in proximity to hazardous conditions. She had to avoid moderate exposure to chemicals, dust and smoke in the workplace. She was capable of engaging in unskilled, repetitive, routine tasks in two-hour increments. She would be absent from work six days per year.

Tr. 21.

At step four, the ALJ found that from December 22, 2017 to November 19, 2019, Plaintiff was able to perform past relevant work as a cashier. Tr. 30.

At step five, the ALJ made an alternate finding that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, from December 22, 2017 to November 19, 2019 Plaintiff could also perform jobs that existed in significant numbers in the national

economy, including the jobs of marker, assembler of small products I, as well as inspector and hand packager. Tr. 30-31.

The ALJ found that beginning November 20, 2019 Plaintiff was limited to sedentary level exertion, with the same nonexertional limitations described in the RFC above; and that therefore, beginning November 20, 2019, a finding of disabled was directed by Medical-Vocational Rule 201.14. Tr. 29, 32.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date until November 20, 2019, and that she became disabled on November 20, 2019. Tr. 32.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review: [3] (1) whether the ALJ

---

[3] Plaintiff also initially raised the issue of whether the ALJ's decision was Constitutionally defective because the ALJ and Appeals Council derived authority from a Commissioner whose appointment and tenure were unconstitutional (due to a removal provision that violated separation of powers principles). ECF No. 24 at 2. The Ninth Circuit recently addressed the issue, severing the unconstitutional clause at issue, determining that there was no reason to regard any of the actions taken by the agency as void, and holding that unless a claimant demonstrates actual harm the unconstitutional provision has no effect on her case. *Kaufmann v. Kijakazi*, No. 21-35344, 2022 WL 1233238, at *2, 4-6 (9th Cir. Apr. 27, 2022). Plaintiff subsequently filed an unopposed motion to strike the issue, ECF No. 36, which was granted by the Undersigned on June 27, 2022. ECF No. 38.

erred in setting Plaintiff's onset date of disability without input from a medical source; (2) whether the ALJ properly evaluated Plaintiff's symptom complaints; and (3) whether the ALJ erred in failing to clarify what a Sit-Stand Option entailed.[4] ECF No. 24 at 2, 8-11.

## DISCUSSION

### A. Onset of Disability Date

Plaintiff alleges the ALJ erred in setting Plaintiff's onset date of disability without input from a medical source. ECF No. 25 at 5-13. An ALJ may, but is not

---

[4] Under the heading "Issues" in her brief, Plaintiff's indicates an issue before the Court is whether the ALJ erred "in his weighing of the medical opinion evidence relating to Plaintiff's physical impairments." ECF No. 24 at 2. However, within the brief, the corresponding argument is labeled and consists of argument that the ALJ erred in failing to clarify what a sit-stand option entailed, with discussion of Plaintiff's RFC and vocational expert testimony at step four and five. ECF No. 24 at 8-11. There is limited discussion of the medical opinion evidence. *Id*. The Court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Rather, the Court will "review only issues which are argued specifically and distinctly." *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). As Plaintiff makes no specific argument concerning any weight given to the medical opinion evidence, the Court declines to consider this issue. As Plaintiff has made an argument concerning the sit-stand option, the Court will consider it, but notes the discrepancy between the Issues and Argument sections of Plaintiff's brief and urges care in making sure the issues raised are clear to the Court.

required to, call upon the services of a medical expert (ME) to assist with inferring the date that the claimant first met the statutory definition of disability. SSR 81-1p, 2018 WL 4945639, at *1 (effective October 2, 2018). "The date that the claimant first met he statutory definition of disability must be supported by the medical and other evidence and be consistent with the nature of the impairment(s). SSR 81-1p, at *5; 20 C.F.R §§ 404.1513, 416.913 (categories of evidence considered).

Here, the ALJ found that as of November 20, 2019 Plaintiff was limited to sedentary exertion, and that she was therefore disabled under the medical-vocational guidelines as of that date. Tr. 32. The ALJ based the onset date of disability on the January 20, 2020 opinion of Plaintiff's provider, Ben Murrell, PA-C, which limited Plaintiff to sedentary level exertion. Tr. 29 (citing Tr. 732-35). The ALJ found that the limitations determined by Mr. Murrell were supported by his objective examination findings, his review of systems, and his familiarity with Plaintiff's medical history and recent diagnostic tests, along with his explanation of supporting diagnoses and symptoms. Tr. 29. The ALJ found Mr. Muller's opinion inconsistent with the record as a whole prior to November 20, 2019, but "infer[d] that [Plaintiff's] symptoms were consistent with the sedentary limitations for two months prior to the date of examination" based on "other evidence in the record [which] supports a reduction in exertional capacity in November 2019." *Id.*

Plaintiff contends that the ALJ's finding that Plaintiff's RFC diminished from light to sedentary level exertion as of November 20, 2019 is arbitrary and not supported by substantial evidence because Plaintiff's symptoms limited her to sedentary work throughout the relevant time period; and that "the ALJ should have called upon a medical consultant to establish when Plaintiff became limited to sedentary work." ECF No. 24 at 6-8. Defendant contends that the record was neither ambiguous or inadequate to allow for proper evaluation of the evidence in

this case, and the ALJ was well equipped to determine Plaintiff's disability onset date without calling a medical advisor. ECF No. 22 at 16. The Court agrees.

The decision to consult a medical expert is within the discretion of the ALJ. SSR 81-1p, 2018 WL 4945639, at *1. Here, the ALJ explained he inferred the disability onset date based on treating provider Mr. Murrell's January 20, 2020 opinion limiting her to sedentary exertion, along with "other evidence in the record [which] supports a reduction in exertional capacity in November 2019." Tr. 29. The ALJ explained this evidence included a telephone call with her pharmacy where she reported worsening symptoms in November 2019; evidence her blood sugar levels, as found on A1C testing, had worsened throughout 2019; and evidence from an October 2019 examination that showed continued diminished sensation to filament testing on both feet, along with her "recent diagnoses of corneal scarring and mild cataracts." Tr. 29-30 (citing Tr. 513, 529, 558). The ALJ concluded that based on this evidence it was "reasonable to infer from the progression of [Plaintiff's] symptoms and signs of neuropathy, pain, and eye impairment, that [she] was unable to safely sustain the demands of light work . . . by November 20, 2019, and that she became limited to sedentary exertion at that time." Tr. 30. Additionally, as discussed *infra*, the ALJ also found that Plaintiff was the primary caregiver of her disabled brothers until paid caregiver hours through the state increased in late 2019, which is also consistent with the onset of disability date. *See* Tr. 45-53.

To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600. Even if the medical opinion evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1158.

For the reasons discussed above, the ALJ's conclusion that the medical evidence supported a progression of Plaintiff's symptoms resulting in limitation to sedentary exertion as of November 20, 2019 is supported by substantial evidence. The ALJ was within his discretion in inferring the date that the claimant first met the statutory definition of disability and Plaintiff is not entitled to remand on this issue.

**B. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom testimony. ECF No. 24 at 11-16.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully supported prior to November 20, 2019. Tr. 22.

*1. Inconsistent with Objective Medical Evidence*

The ALJ found that prior to the disability onset date, Plaintiff's allegations were not consistent with objective findings. Tr. 22, 23-26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch,* 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ found the medical evidence did not fully support the level of limitations claimed prior to onset of disability. Tr. 22-26. The ALJ noted that upon exam in January 2018 Plaintiff had mild bilateral paralumbar tenderness, full range of motion in her back, some pain in her hamstrings upon flexion, 5/5 motor strength in her bilateral lower extremities, normal gait, negative straight leg raise testing, and no spinal tenderness. Tr. 23 (citing Tr. 333-36). The ALJ noted that at an intake appointment for physical therapy later in January 2018, she showed minimal restriction in lumbar motion, slight diminishment in lower-extremity motor strength, and no gait or balance abnormalities. Tr. 23 (citing Tr. 397). The ALJ noted at a rheumatology visit in January 2018, her provider found bilateral mild nodular hand osteoarthritis without acute swelling, synovitis, or evidence of rheumatoid changes; she had mild discomfort with shoulder range of motion, and no swelling in her elbows, knees, ankles or toes. Tr. 23 (citing Tr. 418-20). The ALJ explained that exam at that time showed "slightly tender fibromyalgia tender points . . . but no focal neurological deficits." *Id*. The ALJ also noted at a February 2018 rheumatology follow up Plaintiff's lab results were negative for

rheumatoid factor and other autoimmune factors, she had 10 of 18 fibromyalgia tender points upon exam, and her provider determined that her clinical presentation was most consistent with fibromyalgia and osteoarthritis. Tr. 23 (citing Tr. 423-25).

The ALJ noted that a March 2018 a diabetic foot exam showed decreased sensation to monofilament, but normal pulses and nails, and no deformity or edema; she was diagnosed with uncontrolled diabetes with diabetic mononeuropathy, and subsequent lab results showed A1C of 9.2. Tr. 23 (citing Tr. 451-52, 458). The ALJ noted that upon consultative exam in in April 2018 Plaintiff exhibited some limitation in range of motion in her back, shoulders, and knees but otherwise normal range of motion in her extremities. Tr. 23 (citing Tr. 442-47). She had mildly decreased 4+/5 grip strength on the left, but normal grip on the right. Tr. 23; *see* Tr. 445. The ALJ noted the consultative examiner's explanation that while Plaintiff reported some discomfort in the paralumbar muscles with the maneuver, straight leg raise testing did not produce true sciatic signs. *Id*. The ALJ noted physical exam at that time was "otherwise largely normal," and also that x-rays from April 2018 showed multilevel moderate degenerative disc disease without spondylosis or spondylolisthesis. Tr. 24 (citing Tr. 442-47, 473-75).

The ALJ noted that a December 2018 foot exam revealed diminished and absent left vascular and dorsalis pulses, normal pulses on the right, cold feet, bilateral fifth-toe tenderness, and absent sensation to filament bilaterally; Plaintiff's gait was normal. Tr. 24 (citing Tr. 493). The ALJ also noted Plaintiff's report at that appointment that she had not been consistently taking her injected diabetic medications, and that she felt overwhelmed by pain and the demands of caring for her brother. Tr. 24; *see* Tr. 491. At that appointment her provider also reported Plaintiff had stopped monitoring her glucose, was taking insulin infrequently, and was not taking Humalog at all. Tr. 491. The ALJ also noted,

however, that another diabetic foot exam within the same month was largely normal, including intact protective threshold with monofilament testing, warm skin temperature, intact foot strength, and no edema. Tr. 24 (citing Tr. 719).

At a January 2019 exam to establish care with Mr. Murrell, PA-C, Plaintiff exhibited reduced deep-tendon reflexes in the bilateral lower extremities and decreased range of motion in the right shoulder compared with left, but she also had stable vital signs, no low-back tenderness, negative straight leg raise, and no neurological deficits. Tr. 24 (citing Tr. 681). Upon follow up exam in April 2019, Mr. Murrell indicated Plaintiff's back symptoms remained stable; and in July 2019 he noted reduced bilateral deep-tendon reflexes but an otherwise normal physical exam. Tr. 24 (citing Tr. 608 659). Her diabetes remained uncontrolled during the period at issue, and the ALJ noted her hemoglobin A1C increased during this time from 8.5 in January 2019 to 10.2 on October 2019. Tr. 24 (citing Tr. 369, 513).

The ALJ concluded that while records show uncontrolled diabetes and physical complaints, with some deficits in light-touch sensation and reduced deep tendon reflexes during the period at issue, "[Plaintiff] otherwise demonstrated generally normal musculoskeletal and neurological signs in her medical visits through October 2019." Tr. 24. The ALJ noted, for example, providers found her alert and oriented with no neurological deficits, no edema, and normal back exams "without tenderness or straight-leg signs." Tr. 24-25 (citing e.g., Tr. 428, 451-52, 493, 529, 608, 649, 659, 681).

As for Plaintiff's mental health symptoms, the ALJ noted that upon mental status exam in July 2018 she appeared restless with mildly nervous affect, she was tangential in her speaking but able to be redirected, she had some deficits in memory and poor to fair insight and judgment, but that the examination was otherwise largely normal. Tr. 25 (citing Tr. 476-83; *see* Tr. 479-80). The ALJ noted the consultative examiner's observation that Plaintiff was cooperative and friendly, and mental status findings including that her speech was normal in rate

and tone, she was fully oriented with normal eye contact, she had normal immediate and recent memory, and she could follow a three-step command. *Id*. On the Trail Making Tests, the ALJ noted that Trails A testing was unimpaired while the more complex Trails B test showed moderate impairment; and that memory testing showed borderline visual and immediate memory, low average visual working and delayed memory, and average auditory memory. Tr. 25; *see* Tr. 480-83. The ALJ noted the consultative examiner gave a fair prognosis for improvement with six-months engagement in treatment. Tr. 25. The ALJ also explained mental status findings by other providers were generally normal, including findings that she was cooperative, had normal mood and affect, intact memory, and normal judgement. Tr. 26 (citing e.g., Tr. 428, 452, 649).

The Court must consider the ALJ's decision in the context of the "entire record as a whole," but if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Further, where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The ALJ reasonably concluded that the objective medical evidence did not support the level of impairment alleged by Plaintiff. This was a clear and convincing reason, when combined with the other reasons offered, to discount Plaintiff's symptom reports prior to the disability onset date.

*2. Conservative Treatment*

The ALJ discounted Plaintiff's symptom complaints in part because treatment was conservative. Tr. 24. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive

treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ noted treatment recommendations have been conservative, including physical therapy and medication. Tr. 23-24. The ALJ explained in January 2019 Mr. Murrell recommended Plaintiff continue previously prescribed treatment for diabetes and fibromyalgia; and at an appointment in April 2019, he noted her back symptoms were stable and indicated she should continue conservative care. Tr. 24 (citing Tr. 659, 681). The ALJ noted in July 2019 Mr. Murrell continued to recommend conservative treatment for back pain, including stretching exercises and physical therapy. Tr. 24 (citing Tr. 608). Records from January 2018 show her rheumatologist recommended improving sleep quality, and told Plaintiff that regular exercise, healthy eating, and stress reduction "will be extremely helpful" for her symptoms. Tr. 425.

The ALJ reasonably discounted Plaintiff's symptom complaints in part because treatment was conservative, and this was a clear and convincing reason to discount Plaintiff's symptom reports prior to onset of disability.

*3. Failure to Follow Treatment Recommendations*

The ALJ discounted Plaintiff's symptom complaints because she failed to follow or comply with treatment recommendations. Tr. 23-24. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is

reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina v. Astrue,* 674 F.3d 1104, 1113-14 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520(a).

Here, the ALJ explained Plaintiff was referred for physical therapy in January 2018, but only went to one appointment. Tr. 23; *see* Tr. 401. The ALJ noted that in January 2018 her provider prescribed a transition from Effexor to Cymbalta to help control her fibromyalgia symptoms, but at a follow up visit Plaintiff reported she declined to start Cymbalta due to concern about side effects. Tr. 23 (citing Tr. 423-25, 435). The ALJ also noted while Plaintiff had an abnormal foot exam in December 2018, she also reported she had not been consistently taking her diabetes medications. Tr. 24; *see* Tr. 491. Records also show she reported she had stopped monitoring her glucose several months prior and was taking insulin infrequently. Tr. 491. Her provider noted Plaintiff had not been to her PCP recently, had not seen rheumatology for her fibromyalgia, and that "she feels awful today and she knows this is because she had not been taking care of her diabetes." *Id*. At the hearing, Plaintiff acknowledged she has not always been compliant with diabetes medication during the period at issue. Tr. 59. She testified that she did not check her blood sugar and took diabetes medications irregularly. Tr. 61-62. She testified she managed her diabetes based on how she felt, although she acknowledged this was not working well, as her A1C was recently up to 10. Tr. 64. While records show mental health symptoms, records from May and November 2019, for example, show she declined referral to a behavioral specialist to talk about stress or depression. Tr. 513, 649. At the 2018 consultative examination, she reported she had never received mental health counseling. Tr. 477.

The ALJ reasonably discounted Plaintiff's symptom complaints because she failed to follow or comply with treatment recommendations. This was a clear and convincing reason to discount Plaintiff's symptom reports.

*4. Activities*

The ALJ concluded that Plaintiff's activities were inconsistent with her allegations. Tr. 26. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found evidence of "activities and abilities" inconsistent with Plaintiff's allegations prior to onset of disability. Tr. 26. The ALJ explained, "as referenced throughout the record and her testimony, [Plaintiff] has been a longtime caregiver for her adult brothers with Fragile-X syndrome." *Id*. The ALJ noted Plaintiff's testimony that her brother's required constant redirection to attend to tasks and that she had to keep them away from hazards. Tr. 26; *see* Tr. 50-51. The ALJ also noted her report in July 2018 that she was caring for her father and her brothers, and that at that time she described a daily routine of cleaning, cooking, paying bills, and going shopping; she indicated she could wash dishes, do laundry, vacuum and dust, and that she was able to finish such tasks in a reasonable amount of time. Tr. 26 (citing Tr. 478).

The ALJ also noted Plaintiff's testimony that she became progressively less able to care for her brothers during the period at issue, and that she had obtained

in-home caregivers for them. Tr. 26. The ALJ found, however, that "for much of the period at issue, [Plaintiff] was the one primarily in charge of the care and safety of her brothers, including overseeing their medication and taking them to appointments." *Id*. At the hearing, Plaintiff testified that paid caretaker hours for one of her brothers increased in October 2019, but that up until that point "I was doing it all. It took a huge toll on me." Tr. 45, 49. She testified that caregiver hours for her other brother were in the process of being increased by the state, and that before the caretaker hours increased in late 2019, she was preparing meals, helping her brothers bathe, and was responsible for all house chores. Tr. 50, 53.

While Plaintiff offers a different interpretation of the evidence, the ALJ reasonably found Plaintiff's activities were inconsistent with her claims of disabling limitations prior to the disability onset date. This was a clear and convincing reason, when combined with the other reasons offered, to discount Plaintiff's symptom reports.

Plaintiff is not entitled to remand on this issue.

**C. Sit/Stand Option**

Plaintiff contends the ALJ erred by failing to clarify what degree of sitting and standing the sit/stand option entailed. ECF No. 24 at 8-11. "In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4 (1983).

Here, the ALJ found that prior to November 20, 2019, Plaintiff could perform light work with limitations including a "sit/stand option in the workplace." Tr. 21. Plaintiff contends that the ALJ erred by failing to more clearly set out what the sit/stand limitation entailed for the period prior to November 20, 2019. ECF No. 24 at 9-10. Defendant contends that the limitation to a sit/stand option in the workplace is not ambiguous, and that as the ALJ made alternate step five findings,

any error in the ALJ's step-four finding would be harmless. ECF No. 33 at 18-19. The Court agrees.

First, while Plaintiff contends the ALJ must include what "degree of sitting and standing this limitation entailed," the Court finds that on this record such limitation may be reasonably interpreted as sitting or standing "at-will." *See Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 627 (9th Cir. 2011) (noting that a "sit-stand option . . . is most reasonably interpreted as sitting or standing 'at-will'"); *Donald H. v. Comm'r of Soc. Sec.*, 2020 WL 6886252, at*2 (W.D. Wash, Nov. 24, 2020) ("the ALJ's RFC . . . is not impermissibly vague as to the meaning of 'sit-stand option,' given the plain meaning of the words and cases finding the 'sit-stand option' refers to an option to sit or stand at will").

At the hearing, the vocational expert (hereinafter VE) testified that a person limited to light work with the limitations in the ALJ's hypothetical, including the sit stand option, could perform Plaintiff's past work as a cashier II; the ALJ therefore determined, based on the VE's testimony, that prior to November 20, 2019 Plaintiff could perform her past relevant work and this occupation would "generally permit the requisite sit/stand option." Tr. 30. The ALJ also made alternate step five findings, based on VE testimony, finding there were other jobs existing in significant numbers in the national economy that Plaintiff could have performed prior to November 20, 2019. Tr. 31. The ALJ explained that as Plaintiff's limitation to light work was "impeded by additional limitations," he asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. *Id*. The VE testified that Plaintiff could perform three representative occupations, noting that the job numbers would be eroded by 25 percent due to the sit/stand option. *Id*. The ALJ confirmed with the VE that any testimony inconsistent with or not found in the DOT, such as the sit/stand option, was based on the VE's professional experience. Tr. 30, 82.

Defendant also points out that the VE did not question the sit/stand limitation when testifying that the jobs he gave "allow for the change of position without requiring an accommodation" in response to the ALJ's hypothetical. ECF No. 33 at 20 (citing Tr. 80-81; *see* Tr. 79-82). While Plaintiff posed her own, more restrictive hypothetical(s) at the hearing, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). A claimant fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76.

For reasons discussed throughout this decision, the ALJ's consideration of the evidence is legally sufficient and supported by substantial evidence. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC, including a sit/stand option, or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the medical evidence in this record. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 33**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 24**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant and the file shall be CLOSED**.

**IT IS SO ORDERED.**

DATED January 12, 2023.




ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE